MESCH CLARK ROTHSCHILD
259 North Meyer Avenue
Tucson, Arizona 85701
Phone:  (520) 624-8886
Fax:    (520) 798-1037
Email: TCope@mcrazlaw.com
Email: JSutton@mcrazlaw.com
       ecfdc@mcrazlaw.com

By:    Thom K. Cope, # 25178
       Jana L. Sutton, #032040
       26068/lr

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Maggie Doll, a married woman,<br><br>                    Plaintiff,<br><br>v.<br><br>Haven Health Management, LLC<br><br>                    Defendant. | No.<br><br>**COMPLAINT** |

**PARTIES, JURISDICTION, AND VENUE**

1.  Plaintiff Maggie Doll is a resident of Navajo County, Arizona.

2.  Defendant Haven Health Management, LLC ("Haven") is a Limited Liability Company doing business in Navajo County, Arizona.

3.  At all relevant times, Haven's managerial employees were acting within the course and scope of their employment with Haven.

4. This Court has jurisdiction under 28 U.S.C. § 1331.

5. The Court has pendent jurisdiction over the state law claims under 28 U.S.C. § 1367.

6. The unlawful employment practices described in this Complaint were committed in Navajo County, Arizona.

7. Venue is proper in this Court under 28 U.S.C. § 1391(b).

**GENERAL ALLEGATIONS**

8. Defendant Haven is a skilled nursing facility that employs more than 300 people.

9. Plaintiff Maggie Doll began working for Haven as a wound care nurse on or about February 14, 2020.

10. During the time relevant to this Complaint, Plaintiff was an "employee" and Defendant was an "employer" for purposes of the Americans with Disabilities Act ("ADA"), the Genetic Information Nondiscrimination Act ("GINA"), and Arizona's Paid Sick Leave Act.

11. On or about December 7, 2020, a resident at the Haven facility where Maggie Doll worked was diagnosed with COVID-19, and Ms. Doll personally tested every resident.

12. When Haven implemented COVID-19 protocols, it created "COVID" and "Non-COVID" areas without any transition space.

13. When Maggie Doll raised the lack of a transition space as an issue, her supervisor, Ryan Fair, stated that it was unnecessary.

14. On or about December 21, 2020 Haven was cited by the state for failure to implement adequate infection control, including for not having a transition unit between COVID and non-COVID units.

15. In December through early January, Maggie Doll continued to raise concerns regarding safety issues to her supervisors, including staffing, regular COVID testing,

improper discharge procedures, and lack of interdisciplinary team ("IDT") meetings at Haven.

16. On or about January 15, 2021, Defendant's agents, Ryan Fair and Vindee Brogan, asked Ms. Doll for a meeting.

17. At that meeting, Maggie Doll was asked to stop raising concerns regarding staffing, testing, and other safety issues.

18. When Maggie Doll arrived at work on January 25, she had not yet put on a face shield and was standing near, but socially distanced from, other Haven employees who were not wearing face protection.

19. Ryan Fair approached the group, turned to Ms. Doll specifically, and yelled at her that if she could not abide by Haven's PPE requirements, she had to leave.

20. Maggie Doll removed herself from the situation by going to the staff break room and, after taking time to compose herself, exited the building to her car.

21. While in her car, Ms. Doll sent a message to Mr. Fair and Ms. Brogan notifying them that she needed to take a leave of absence.

22. Mr. Fair responded: "If this is a resignation, please see Melissa to fill out the proper paperwork and we will honor it effective immediately."

23. Ms. Doll did not fill out any termination paperwork.

24. Ms. Doll did not inform anyone at Haven that she wanted to or intended to resign from her employment.

25. After leaving Haven on January 25, Ms. Doll informed Haven she was on sick leave.

26. Ms. Doll continued to call in sick and worked with other nurses, through text messages and her work email, to coordinate schedules on January 26 and 27.

27. On January 27, a nurse asked Ms. Doll if she was coming in that day.

28. On January 28, another nurse asked Ms. Doll about one of Haven's residents.

3

29. On Friday, January 29, Maggie Doll tested positive for COVID-19.

30. On Monday, February 1, Ms. Doll logged into her work email address and informed Haven, through its Human Resources ("HR") Department, that she needed to quarantine herself and asked to use her paid time off ("PTO") during her necessary quarantine period.

31. Melissa Sukut in, Defendant's HR Department, acknowledged Ms. Doll's request to use PTO for her quarantine and asked Ms. Doll how many hours she had worked on January 25.

32. Ms. Doll responded that she had taken sick leave for her entire shift on January 25.

33. On February 2, Ms. Doll began mental health treatment, was diagnosed with anxiety and depression, and began taking medication related to her anxiety and depression.

34. Ms. Doll's anxiety and depression are directly related to how she was treated by Haven.

**COUNT ONE**

**Arizona's Paid Sick Leave Act**

35. Plaintiff incorporates the allegations above.

36. Plaintiff had accrued paid sick time.

37. Plaintiff had a right to take paid time for her "mental or physical illness, injury or health condition" and/or "need for medical diagnosis, care, or treatment of a mental or physical illness, injury or health condition." A.R.S. § 23-373(A)(1).

38. Plaintiff asked to use her accrued paid sick time.

39. Defendant's HR department informed Plaintiff that it would grant Plaintiff's request for time off.

40. Instead of granting Plaintiff's request, Defendant terminated Plaintiff in retaliation for her exercise of her right to use her accrued paid time off.

4

41. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has been damaged.

## COUNT TWO

### Disability Discrimination

42. Plaintiff incorporates the allegations above.

43. Plaintiff's COVID-19 diagnosis was a disability.

44. Defendant failed to engage in the inter-active process and failed to provide Plaintiff with reasonable accommodations based on her disability.

45. Defendant terminated Plaintiff because of her disability.

46. The stated reasons, if any, for failing to provide Plaintiff with reasonable accommodations for her disability are pretextual.

47. The stated reasons, if any, for terminating Plaintiff are pretextual.

48. Defendant's discriminatory conduct was deliberate, willful, and performed with reckless disregard for Plaintiff's rights.

49. Plaintiff has exhausted her administrative prerequisites.

50. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered financial and emotional harm.

## COUNT THREE

### Wrongful Termination

51. Plaintiff incorporates the allegations above.

52. Plaintiff reported violations of Arizona regulations governing patient care and safety, including Arizona Administrative Code § 9-10-403(C).

53. Reporting violations of the standard of care or risks to the health and safety of patients is protected under Arizona law. *See* A.R.S. § 36-450 *et seq.*

54. Defendant terminated Plaintiff in retaliation for her reporting violations of standards of practice and risks Defendant was posing to the health, safety, and welfare of its residents.

55. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has been damaged.

## COUNT FOUR

### Failure to Provide Notice Under COBRA

56. Plaintiff incorporates the allegations above.

57. Defendant retroactively terminated Plaintiff on January 25, 2021.

58. Defendant, by terminating Plaintiff's employment, also terminated Plaintiff's health care coverage.

59. Plaintiff was eligible for continuing health care coverage under the Consolidated Omnibus Budget Act of 1985 ("COBRA"), 29 U.S.C. §§ 1161-1168.

60. Defendant failed to provide Plaintiff timely notice of her rights to continue coverage under COBRA.

61. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has been damaged.

## COUNT FIVE

### Genetic Information Nondiscrimination Act

62. Plaintiff incorporates the allegations above.

63. The Genetic Information Nondiscrimination Act ("GINA") prohibits employers from asking employees medical questions about family members. *See* 42 U.S.C. § 2000ff-1(b).

64. Defendant asked Plaintiff whether her family members had contracted COVID-19 and for information regarding their symptoms.

65. As a direct and proximate result of Defendant's prohibited conduct, Plaintiff has been damaged.

**REQUESTS FOR RELIEF**

Plaintiff respectfully requests:

A. Compensatory damages in an amount to be proven at trial;

B. Back pay and front pay in an amount to be proven at trial;

C. Emotional distress damages in an amount to be proven at trial;

D. Punitive damages in an amount to be proven at trial;

E. Penalties of $150 per day from the day of her termination for violations of the Arizona Mandatory Paid Sick Leave Act provisions.

F. Additional damages of $100 per day since 30 days after the date of termination under 29 U.S.C. § 1132(c);

G. Reasonable costs and attorney fees; and

H. Such other relief as the Court deems just.

DATED: January 20, 2022

MESCH CLARK ROTHSCHILD

By: */s/* Thom K. Cope
Thom K. Cope
Jana L. Sutton
*Attorneys for Plaintiff*

 */s/ Lisandra R. Ruiz*
2907980